## W. A. UNDERWOOD v. F. LACAPÈRE—L. RUSH, P. C. BOURGEOIS and J. R. WHITE, Warrantors.

In a sale of a slave mother and her infant child, where it appeared by the evidence that the child was only sold with the mother on account of its tender age, and added nothing to the value of the mother—*Held :* That the vendor was not liable in warranty for the value of the child, which his vendee had been compelled to pay as warrantor in a subsequent sale of both mother and child.

Costs follow the judgment, and an exception to the rule cannot be made in the case of a warrantor called in to defend the title of his vendee, and who is decreed not to be liable for the return of any part of the price he had received.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.
*C. Dufour* and *Beatty & Bush,* for *Mrs. Bourgeois,* appellant. *Johnson & Denis,* for *White,* appellee.

BUCHANAN, J. The main question presented by this appeal is, whether *Mrs. Bourgeois* is entitled to any money judgment against her warrantor, *White,* on account of her slave boy, *William,* her vendee having been evicted, and having obtained judgment against her for his estimated value at the time she sold him.

When *White* sold the boy to *Mrs. Bourgeois* he was an infant but six weeks old, and was sold together with his mother *Peggy* for the sum of eight hundred dollars. But the evidence shows that the child was of no appreciable value at that age, and, instead of enhancing, really diminished the then value of the mother. The inference is, that no part of the eight hundred dollars was paid by *Bourgeois* for the child, but he was acquired for nothing, being inseparable from his mother, who was sold for eight hundred dollars. Between four and five years afterwards, *Bourgeois* sold the boy, *William,* and his mother, *Peggy,*

for one thousand dollars. At this time, the boy is estimated to have been worth two hundred and fifty dollars, and the mother seven hundred and fifty.

*Lacapère, Bourgeois'* vendee, upon being evicted of the boy, was, therefore, entitled to recover of *Bourgeois*, in warranty, two hundred and fifty dollars, the price which he paid.

But *Bourgeois* having paid nothing for the boy to *White*, the author of his title, can recover nothing as his price.

It is true, the vendor whose vendee is evicted, is bound, not only for the restitution of the price, the fruits, &c., recovered by the real owner, and the costs of suit, but also *for the damages* when the vendee has suffered, if any, besides the price that he has paid. C. C. 2482. But here no damages are proven. *Bourgeois* has only had to refund the two hundred and fifty dollars which she received for a boy who cost her nothing. We adhere to the rule established in the case of *Burrows* v. *Peirce*, 6th An. 298, that the loss of profits by reason of an accidental increase in value of the property sold, after the sale, is not recoverable by the evicted vendee, in the recourse upon his warrantor. And the fact, that the vendee of a slave has afterwards sold him for a higher price than he gave, does not, upon eviction, authorize him to recover the difference from his vendor, as damages.

The District Judge, therefore, properly ruled that no claim had been established against *White*, either for a price, or for damages.

Judgment affirmed with costs.

---

### SAME CASE—ON A RE-HEARING.

BUCHANAN, J. The institution of two separate petitory actions, at different periods of time, one for the slave woman, *Peggy*, and one for her child,—the mother and child having previously passed, by several distinct conveyances, for one price in each conveyance, without a separate estimation of the relative value of each,—has produced a complication in the facts, which gives some color to the complaints made by the warrantor, *Mrs. Bourgeois*, in her petition for re-hearing.

We have, therefore, accorded the re-hearing, and have carefully reconsidered the case in all its bearings. It results from our researches, that *Mrs. Bourgeois* having purchased the woman, *Peggy*, and her infant child from *White*, for eight hundred dollars, and having, some years thereafter, resold the same woman and child to *Lacapère*, for one thousand dollars, was sued in warranty for the woman alone, and cited her vendor, *White*, in warranty in the same suit. *Mrs. Bourgeois* was condemned, as warrantor, to pay *Lacapère* seven hundred dollars, but neglected to have judgment entered up, upon her call in warranty.

Perhaps she was unable to do so, *White* being only in court, in that suit, as an absentee, by a curator *ad hoc* appointed by the court to represent him. Whatever may have been the reason, the fact is that there was no judgment upon that call in warranty. Subsequently, *Mrs. Bourgeois* was cited a second time in warranty of *Lacapère's* title ; but this time, to the child of *Peggy* alone, which had not been sued for in the first suit. She cited her vendor, *White*, to warrant her also in this suit. *White* was served personally with citation and joined issue. Judgment was rendered against *Mrs. Bourgeois* in this suit, for two

UNDERWOOD
v.
LACAPÈRE.

hundred and fifty dollars, the estimated relative value of the child at the time of the sale from *Mrs. Bourgeois* to *Lacapère,* and there was judgment in favor of *White* upon the call in warranty of *Mrs. Bourgeois*, the court being of opinion, under the evidence, that the child possessed no appreciable value at the time of the conveyance by *White* to *Mrs. Bourgeois*. This judgment was affirmed by our decree already pronounced herein. And we are unable to perceive that we have wronged *Mrs. Bourgeois* by that decree.

In this suit, nothing was in controversy but the child, although it is true that child constituted one of several objects which had passed by the same conveyance. But it appears from the evidence, that the child added nothing to the value of the other article sold, the mother, at that time. It was necessarily included in the conveyance, however, because the humane provision of our law is imperative, that the slave mother cannot be sold separately from her offspring of tender age.

But it seems from the statements of the petition for re-hearing, that *Mrs. Bourgeois* settled her claim against *White* in the first suit out of court, and received from him for the woman *Peggy* the same amount, seven hundred dollars, which she had been condemned to pay to *Lacapère*. Nothing of this appears in the record; but we take the statement of counsel to be correct. If so, it is possible that *Mrs. Bourgeois* will have a remedy for further indemnity against *White*. For it is now decided, contradictorily with *White*, that the whole of the price paid by *Bourgeois* to *White* ($800) was for the woman *Peggy* alone. And it may be argued, that in the first suit, *Mrs. Bourgeois* could not have recovered more than $700 from *White*, because she had only been condemned to pay $700. But that now, having been condemned to pay an additional sum of more than $100, she has an additional claim for the balance of the price by her paid. We throw out these observations without expressing a decided opinion. But we are clear that we cannot give *Mrs. Bourgeois* relief at this time, and with the proofs before us.

Upon the question of costs, we perceive no more reason to change our previous judgment. Costs follow the judgment and are to be paid by the party cast. C. P. 549; *Bolton* v. *Harrod*, 10 M. R., 115.

Let our former judgment remain undisturbed.

VOORHIES, J., absent.