STATE OF NEBRASKA, APPELLEE, V. RUSSELL RUBEK, APPELLANT.
371 N.W.2d 537

Filed July 26, 1985.   No. 84-966.

Emil M. Fabian of Taylor, Fabian, Thielen & Thielen, for appellant.

Robert M. Spire, Attorney General, and Charles E. Lowe, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Russell Rubek was convicted by a jury of attempted first degree sexual assault in violation of Neb. Rev. Stat. §§ 28-201 and 28-319(1)(a) (Reissue 1979) (count I) and assault in the third degree in violation of Neb. Rev. Stat. § 28-310 (Reissue 1979) (count II). He was sentenced on count I to a term of imprisonment of not less than 3 nor more than 10 years and on count II to a term of imprisonment of 1 year, the sentence on count II to be served concurrently with the sentence on count I. It is from those convictions and sentences that Rubek now appeals to this court. We affirm.

Rubek has assigned 10 separate errors which he maintains were committed by the district court and which entitle him to a new trial. Though the assignments are 10 in number, they may be grouped into 3 basic claims. The first claim is that the district court should have sustained Rubek's motion to quash count I of the information filed in the district court because the county court for Sarpy County, Nebraska, had earlier refused to bind him over. His second claim is that, in any event, the evidence is insufficient to establish guilt beyond a reasonable doubt with regard to count I, attempted first degree sexual assault. His

final claim is that the district court committed prejudicial error in refusing to include an instruction on the defense of self-defense in the same instruction as that describing the elements necessary to establish assault in the third degree, even though the instruction on self-defense was given as part of a subsequent instruction. We shall address the issues as raised by Rubek in these three categories.

In order to discuss the first claim, it is necessary to provide some brief background. Rubek was initially charged in the county court for Sarpy County, Nebraska, with attempted first degree sexual assault and first degree assault. Following a preliminary hearing, the county judge bound Rubek over on the first degree assault charge but discharged him on the attempted first degree sexual assault charge on the basis that the evidence was insufficient to establish probable cause. An information charging Rubek with both attempted first degree sexual assault and assault in the first degree was filed in the district court for Sarpy County, Nebraska, and a second preliminary hearing was held in the district court on the attempted first degree sexual assault charge. Following the second preliminary hearing, the district judge found probable cause to hold Rubek for trial on the attempted first degree sexual assault charge, in addition to the first degree assault charge on which he had been previously bound over.

Rubek in essence argues that it is not fair for the county attorney to be permitted to file an information in the district court after the county court has refused to bind an individual over to the district court. In support of his argument he maintains that once a complaint has been discharged in the county court, the State should have no authority to refile the identical charge in the district court.

It has long been the rule in this jurisdiction that the discharge of one accused of crime by an examining magistrate following a preliminary hearing does not bar the refiling of the same or different charges before another magistrate. In *In Re Garst*, 10 Neb. 78, 81, 4 N.W. 511, 512-13 (1880), we said:

> An examination of a person accused of a felony before a committing magistrate is in no sense a trial. If so, the officer would have no jurisdiction whatever. The object of

an examination is, *first*, to ascertain whether an offense has been committed; *second*, if so, whether there is probable cause to believe that the accused committed it.

> Where a complaint is made under oath before a magistrate charging a party with the commission of an offense, such magistrate has authority to issue a warrant for the arrest of the accused, and the examination which follows is for the purpose of determining whether sufficient cause exists for his retention to abide the action of the grand jury. The grand jury may refuse to indict even if the accused is bound over, or may find an indictment even if he is discharged. But his discharge by one magistrate is no bar to an examination for the same offense in case the proper complaint is made before the same or another magistrate.

> It is urged that a party accused of an offense might thus be subjected to great annoyance by reason of repeated examinations. While this is true, and if there is not a reasonable ground of suspicion a party may maintain in a proper case an action for malicious prosecution for injuries sustained by such prosecutions, yet such re-examinations afford no grounds of themselves to justify the issuance of a writ of habeas corpus.

We have repeated that statement or one similar to that on a number of subsequent occasions. See, *Skinner v. Jensen*, 178 Neb. 733, 135 N.W.2d 134 (1965); *Van Buren v. State*, 65 Neb. 223, 91 N.W. 201 (1902). The only change between the reasoning and conclusion reached by the court in *Garst* and the present situation is that as a general rule we no longer prosecute in the district court by action of the grand jury but, rather, by the filing of an information. See, Neb. Rev. Stat. § 29-1601 (Reissue 1979); *Duggan v. Olson*, 146 Neb. 248, 19 N.W.2d 353 (1945). That change does not affect our decision in *Garst* or the subsequent decisions of this court.

Furthermore, one may be charged directly in the district court and afforded a preliminary hearing before a district judge without ever having appeared in the county court. Neb. Rev. Stat. § 29-203 (Reissue 1979) provides in part:

> Judges of the district courts shall have the same powers to

require securities for the keeping of the peace and good behavior, and bail for appearance in courts to answer complaints to keep the peace, and for crimes and offenses committed in their respective districts as any of the magistrates aforesaid have in their respective counties.

In *Callies v. State*, 157 Neb. 640, 646-47, 61 N.W.2d 370, 375 (1953), we said:

A district court, within its district, is authorized to exercise the powers of examining magistrates generally, with respect to preliminary hearings of persons accused of the commission of a felony. See Van Buren v. State, 65 Neb. 223, 91 N.W. 201.

"It is discretionary with the district court whether it will sit as an examining magistrate, and its ruling in that regard will not be disturbed where no abuse is shown." [Citation omitted.]

See, also, *Fugate v. Ronin*, 167 Neb. 70, 91 N.W.2d 240 (1958).

Likewise, it would appear to be the majority rule throughout the United States that an examining magistrate's refusal to bind a defendant over does not bar refiling the identical charges. See, *State v. Ruiz*, 106 Idaho 336, 678 P.2d 1109 (1984); *People v. Jordan*, 155 Cal. App. 3d 769, 203 Cal. Rptr. 172 (1984); *Com. v. McClain*, 325 Pa. Super. 29, 472 A.2d 630 (1984); *State v. Mayberry*, 457 So. 2d 880 (La. App. 1984); *People v. Mitchell*, 116 Ill. App. 3d 44, 451 N.E.2d 934 (1983); *State v. Stewart*, 615 S.W.2d 600 (Mo. App. 1981); *State v. Turner*, 223 Kan. 707, 576 P.2d 644 (1978); *People v. Ackrish*, 92 Misc. 2d 431, 400 N.Y.S.2d 684 (1977).

Rubek argues that the enactment of Neb. Rev. Stat. § 29-2317 (Reissue 1979) in 1975 has invalidated the historically accepted procedure of permitting a prosecutor to refile charges against an accused after discharge by the original examining magistrate. In support of that argument he cites to us § 29-2317, which provides in part as follows:

A prosecuting attorney, including any county attorney, city attorney, or designated assistant, may take exception to any ruling or decision of the municipal or county court made during the prosecution of a cause by presenting to the court a notice of intent to take an appeal to the district

court with reference to the rulings or decisions of which complaint is made.

The fact that the Legislature has granted to a prosecuting attorney the right to appeal a decision of a municipal or county court does not thereby repeal by implication the authority of the prosecuting attorney to refile in a county court or to file directly in a district court; and the adoption of § 29-2317 simply does not stand for that proposition. Rubek's first claim must therefore be overruled.

We turn, then, to Rubek's second claim, that the evidence was insufficient to convict him on count I. There was certainly sufficient evidence to submit the issue to the jury for its determination. We have frequently said:

> "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty."

*State v. Piskorski*, 218 Neb. 543, 550, 357 N.W.2d 206, 212 (1984). See, also, *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). While the evidence was in conflict, there was more than enough evidence, as we shall note in a moment, if believed by it, to permit the jury to find beyond a reasonable doubt that Rubek committed the crimes with which he was charged. The jury apparently believed the victim and her witnesses and disbelieved Rubek.

> In a criminal case it is not the province of [the Supreme Court] to determine the credibility of witnesses or weigh the evidence. Where there is sufficient evidence to justify the verdict, the verdict will not be set aside on appeal unless clearly wrong. See, State v. Davis, 198 Neb. 823, 255 N.W.2d 434; State v. Von Suggs, 196 Neb. 757, 246 N.W.2d 206.

*State v. Morosin*, 200 Neb. 62, 69, 262 N.W.2d 194, 197 (1978). We believe an examination of the record compels us to reject Rubek's second claim.

As we have noted, while certain aspects of the evidence were in dispute, it is undisputed that the evidence established that the

victim and a friend went to the Last Outpost Bar on U.S. Highway 73-75 in the Bellevue-South Omaha area on the night of February 11, 1984. While there, they met Rubek and two of his male friends. The victim and her friend ultimately sat at a table in the bar with Rubek and his friends, and during the course of the evening the victim and Rubek became friendly and danced together several times. The victim consumed alcoholic beverages, both before going to the bar and while at the bar. At approximately 1 a.m. the following morning the bar closed, and the victim and her friend left to return home. The victim apparently agreed to give Rubek a ride home, and Rubek got in the back seat behind the victim, who was driving.

At this point the evidence is in conflict. The victim testified that she drove her friend home first because the friend lived nearby and because the victim could easily find her house. The victim maintains that after taking her friend home she was guided by directions given by Rubek and that, because of the alcohol she had earlier consumed, she became disoriented and uncertain of where she was driving. Finally, the victim maintains, she realized she was in an area with few lights. She saw headstones and knew she was in a cemetery near some sort of garage or shed. She maintains that she became frightened and tried to put her car into reverse in order to leave the area. However, Rubek, at this point, reached over the seat, threw the gearshift into park, and proceeded to pull her into the back seat of the car by her hair and her shoulder. According to the victim, Rubek immediately started hitting her about the head and chest area with his hands. She claims that she passed out for some short period of time but came back to consciousness when she felt a very hard blow on her chest. She then realized that Rubek was removing her jeans and panties. He had them off one leg and was attempting to get them off over her boot on her other foot, and they did eventually come off. The victim maintains that she struggled with Rubek and distracted him momentarily by saying that she saw someone outside. While Rubek was distracted, the victim unlocked the car door at her head. She then kicked the defendant, crawled out of the door, and ran away from the car. As she was running, she heard her car start and leave the cemetery.

Rubek, on the other hand, maintains that the victim was a willing participant, desirous of engaging in sexual relations with him, and that it was the victim who freely and voluntarily drove them to the cemetery. Upon arriving they both voluntarily moved from the front seat to the back seat and proceeded to caress and fondle each other. Rubek maintains that together they removed the victim's jeans and panties, and it was at this point that the victim apparently had second thoughts and struck him in the groin with her knee. Rubek maintains he lost control and hit the victim in the face with his fist.

There was further evidence, uncontradicted, that the victim then ran down a hill in the cemetery, bruising and scratching her legs and knees, climbed over a fence at the boundary of the cemetery, and ran to a nearby house. She rang the bell of the house, awoke the residents, and pleaded to be let into the dwelling. The residents of the house observed that the victim had bruises, injuries to her face, swelling of her eyes, a cut on her lip, and was bleeding. They also saw that she was hysterical, screaming, frightened, and emotionally upset, and noted that she was wearing no pants or underwear and had only a jacket wrapped around her waist. Additionally, she was missing one boot. The victim told the residents that she was scared of a man named "Russ" coming back to get her. A Bellevue policeman was called, and he too observed the injuries and swelling on the victim's face, the victim's hysterical, incoherent demeanor, and her lack of clothing. The victim reported to the officer that she had been assaulted. The victim was then taken by rescue squad to Midlands Community Hospital, where observations of her injuries were made and treatment given. The emergency room report was put into evidence. The report established that the victim had a large bruise on her chest area, incurred loss of feeling in her cheek, and had a cut requiring suturing in her pubic area, thought to be caused when she climbed over a fence while fleeing from Rubek. A photograph taken of the victim the next morning and put into evidence showed graphically the swelling and disfiguration of the victim's face in the immediate aftermath of the assault. There was more than sufficient evidence which, if believed by the jury, supported the conviction.

The testimony of the residents of the home to which the victim ran and of the police officer was sufficient to constitute corroborative evidence. It is not necessary in a sexual assault case that there be an independent eyewitness. In most instances such could not be provided. The rule is properly set out in *Miller v. State*, 169 Neb. 737, 740, 100 N.W.2d 876, 879 (1960), wherein we said:

"In a prosecution for assault with intent to commit rape, it is not essential to a conviction that the prosecutrix should be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn."

See, also, *State v. Beasley*, 214 Neb. 918, 336 N.W.2d 601 (1983); *State v. Gero*, 184 Neb. 107, 165 N.W.2d 371 (1969); *Shepperd v. State*, 168 Neb. 464, 96 N.W.2d 261 (1959). We must keep in mind that Rubek was not charged or convicted of sexual assault in the first degree, which requires penetration, but merely of attempted first degree sexual assault, which requires that the person so charged and convicted "[i]ntentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime." § 28-201(1)(b). The jury could reasonably find, if it believed the evidence offered by the victim, that more than a substantial step was taken in an effort to commit first degree sexual assault and that, had the victim not otherwise escaped, penetration would have occurred. The second claim must likewise be overruled.

That brings us, then, to the final claim regarding the jury instructions. Before embarking upon an examination of that claim, we observe that Rubek was originally charged with assault in the first degree. At the close of the evidence, the district judge announced that he believed the evidence was insufficient to establish assault in the first degree, in that the evidence failed to establish serious bodily injury as required by Neb. Rev. Stat. § 28-308 (Reissue 1979). He advised the parties

that, instead, he intended to submit to the jury an instruction on assault in the third degree, which requires bodily injury but not "serious" bodily injury. See § 28-310(1)(a). Rubek made no objection to the giving of such an instruction, nor has he assigned that matter as error before this court. This court will generally not consider instructions to which no objection is made, see *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985), nor will we consider errors not assigned, see, Neb. Ct. R. 9D(1)d (rev. 1983); *State v. Hoekstra, ante* p. 309, 369 N.W.2d 643 (1985); *State v. Toth, ante* p. 311, 369 N.W.2d 644 (1985). Furthermore, because we do not consider the matter, we make no decision on the propriety of a trial court's tendering what is believed to be a lesser-included offense instruction on the court's own motion. That is not to say that such procedure is valid or invalid, but merely to point out that the procedure in this case is accepted without comment because of the posture in which it comes to this court. With that observation we turn to the specific claim.

In instruction No. 4 the district court instructed the jury on the elements necessary to be established in order for Rubek to be found guilty of assault in the third degree. In instruction No. 10 the district court instructed the jury on the defense of "self-defense." There is no claim made that the instructions as given were incorrect, but only that instruction No. 10 should have been a part of instruction No. 4. Apparently, Rubek believes that by combining the instructions the jury might be more inclined to favor his defense. We know of no rule to that effect. Quite to the contrary, we have repeatedly held that " '[a]ll the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' " *State v. Bartholomew*, 212 Neb. 270, 275, 322 N.W.2d 432, 436 (1982). See, also, *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). Rubek's final claim must likewise be overruled. For these reasons, therefore, the judgment must be affirmed.

AFFIRMED.